Let me actually start on this case. Let me state what I hope is obvious, but just in case, I'll say it anyway. I suspect everybody in the room is aware that the next several cases are related to each other. And I don't know whether it's good fortune or bad in our part of yours that they're all given to us together, but they have been. So I'll make two observations or requests. First, we're going to go through the cases sequentially as they are on the calendar. To the extent that arguments have been covered before, you're free to acknowledge the fact that we were sitting here 20 minutes before and heard the same argument expressed by somebody else. You don't have to repeat it all over again. We welcome your individual perspectives and additional observations, but we don't have to hear the same argument in each case. Second, because of the collection of cases, it's kind of important for us to try to keep the player straight. And so if when you start your argument, make it very clear to us who you're there for and what the particulars of your case are, that will help us focus as we hear the arguments in sequence. So with that, we'll start with the Egallo case. Good morning. May it please the Court. James Fogelman and with me is my colleague, Chris Jennings of Gibson, Dunn & Crusher. We're on behalf of appellants and Canada Corp. and WD Services in this case. So we'll be wearing several hats today. I'm also appearing on behalf of appellees in the Sierra Pacific and in the Ableman and Texas, Ohio cases. But in the Texas, Ohio and Ableman cases, my esteemed colleague, Joel Kleinman, will be addressing these preemption and filed-rate doctrine issues. But as the Court noted, there's going to be quite some overlap between the cases because they address primarily the same issues. Similar allegations of alleged wrongful conduct in the interstate transportation of wholesale gas and in the sale of wholesale gas at the California border markets. The allegations in these cases overlap in many respects. But in this case, we're here on a certification order from a denial of a summary judgment motion. And because it's on certification, the procedural posture is essentially the same. But we have some additional evidence that we can put forth to the Court. But in this case, in all the cases you'll hear today, we're really not talking about who's right and who's wrong. I'm sure the people who brought the cases think they're right and we on the other side think they're wrong. But what we're talking about here is only where the appropriate forum is to have these things heard. That's what we're talking about. And there really are two choices. There's having these heard at FERC, the Federal Energy Regulatory Commission, or in every State and Federal court in the country. Those are the options. That's all I'm saying. Well, is that really an option for Gallo? I mean, if Gallo's purchase is a retail purchase, can they get heard at FERC? Yes, Your Honor. I don't know that you have to characterize their purchase as retail, but it doesn't matter who they are. Anyone can file a complaint at FERC and have this claim heard. Was it not retail? They allege that they're a consumer of natural gas? Yes, Your Honor. They do allege that they're a consumer of natural gas. They're no different than the consumers of natural gas before the Ninth Circuit and County of Stanislaus in 1997. In those cases, they had people like the Gallos who were large consumers in the wholesale markets, and they had people like you or me. In that case, it was Mary Grogan who bought gas by turning on the tip to make some tea at the stove. In each case, they were fairly termed retail customers, but they are buying, in this case and in some of the plaintiffs in Stanislaus, in the wholesale markets, but they're buying it for their own money. They're not buying for resale. Well, actually, you'll hear the record actually does have a contract in it which shows that Gallo has the right to buy and sell for resale in some respects, and their experts Quinn and Landon do take into account the gas that they sold back. Some of the other plaintiffs, you'll hear Sierra Pacific bought and sold half a billion dollars of gas for resale. So they're kind of hybrids is what they are. But the distinction of whether they're retail or wholesale doesn't matter in this case any more than it mattered before the Ninth Circuit in County of Stanislaus, and it doesn't matter because of the long line of Supreme Court cases which have addressed the issue at the retail level, and as the Ninth Circuit found on several occasions in 2004 and more recently in the electricity context. It's not a question of who the... Counsel, let me just... You say very glibly that these parties can get a hearing before FERC. Now, the only time that I have seen, and you probably know more about it than I, is that they did take some action against Enron. But ordinarily, I don't think they fuss with these cases. Your Honor, they fuss quite a bit, and I don't say anything glibly. I'll just give you a few examples of what they've done. And these are in the record, and I would note first, though, that the file rate doctrine and preemption principles don't turn on what the FERC has done, but in this case they've been doing quite a lot. They have investigated the run-up of natural gas prices. That investigation was, in fact, referenced in last year's decision of PUC v. FERC, in which Judge Clifton was involved. They have required, in one case, 900,000 trades of natural gas to be submitted and reviewed them for justice and reasonableness. They have entered into settlement agreements with a large number of parties in the natural gas industry, requiring them to pay large sums of money that will be used for some purpose in the future by FERC. One of those decisions was the Reliant decision in 2003, in which the FERC talked about its jurisdiction and its role of regulating this very industry, the border markets of California, and reporting interstate sales and transportation of natural gas. And in Enron, in fact, you're right. Using that same power, they did revoke Enron's blanket market certificate, effectively putting them out of the gas business. But they also have more power than that. They have a plethora of power, no less and, in fact, probably more than they have in the electricity context. Do they have the power to order a refund to Gallo? They have the power to order retroactive refunds, disgorgements. I say Gallo pointedly because my understanding is that FERC doesn't have jurisdiction over a sale not for resale. And so there's some question in my mind. You can make all the reference you want to the ability to file in front of FERC. Anybody can file a document here, too.  I mean, is FERC really involved? Is there jurisdiction over this transaction? Your Honor, it is jurisdiction. And let me tell you why. Two reasons. And the first is that what's being talked about in this particular case, and frankly all the cases, is interstate transportation of natural gas. And the claims in this case are about the allegedly inflated interstate transportation costs of getting gas to the California border. FERC has exclusive control. I don't think that's what these cases are all about. I mean, they're talking about filing with price index reporters inflated prices. And I don't think the inflated price is simply the price of getting it from wherever it is in West Texas to wherever it is at the border. I mean, the gas price is in there someplace, too. Your Honor, the one with the – I'll just read a couple of record sites. The record is clear in this case in pages – if you look at 840 through 42, the conspiracy is with regard to the pricing and sale of interstate gas transportation contracts into California. The conspiracy is about the bundled price. That's the commodity and transportation price of natural gas delivered to California. And you've got an allegation here, defendants thereby colluded to increase the basis differential throughout California at all prices of which it was a component. That's what we're talking about here. And they mention the skyrocketing price. That's my impression. The gas is in there, too. It's not just hauling it. You're right. But when you buy at the border markets, whether it's at TOPOC or it's at Mallin or PG&E Citygate, you're buying a commodity. In this case, what the plaintiffs are complaining about is the bundled price, that is, the price of natural gas that includes both the transportation component and the commodity component. They're not separated down the middle in some identifiable way. Yes, Your Honor. Could you get back to Judge Clifton's question? Has FERC, maybe if I frame it that way, has FERC given relief to a consumer of natural gas such as Gallo, whether or not it has that jurisdiction? Have they given relief to that, in that sort of context, to non-jurisdictional transactions? Well, it depends on the timing of it. There are – there's relief available, as we've talked about. They have had some settlements, and in the Sierra Pacific case, you'll hear that they are seeking relief at FERC for most of their gas. But I'm not aware of an order where any of these plants have sought and received yet a disgorgement remedy or a refund remedy. But you believe on – and you're saying on the record, on behalf of your client, that you believe FERC is empowered to provide a remedy to people in the position of Gallo? Yes. That does mean that we're conceding the merits of the claim, but FERC is no question has the power to do it. In particular, I would note – I haven't figured out how. I don't know how they have jurisdiction over this transaction. Well, let me explain it a little further if I can, because I don't think I've obviously done it clear enough yet. One of the rules that FERC has enacted when it went to this market-based system was 636. And 636A talks about their control over the interstate transportation system of natural gas, even if it's used for a direct end sale, like the sale to Gallo. And to the extent that people are complaining about the inflated transportation component of a natural gas rate, it doesn't matter whether it's an end sale or a sale up the chain. FERC has control, and they've said it in 636A. That's a slightly different point. I mean, I understand Stanislaus, for example, or the whole doctrine that says if a sale – if a chain has gone through somebody who's regulated, it's no longer a first sale, then you have to be concerned about – and FERC has authority over – downstream transactions because of the impact they can have with regard to what FERC can regulate. But that really doesn't answer the question I'm posing. I acknowledge you've got the whole question of whether the gas has passed through somebody who is regulated, but I'm still trying to figure out is there any possible way that a customer in the position of Gallo can get relief via FERC. And it seems to me the answer is no. The answer actually is yes, Your Honor. And it's no different in the electricity context, where end users were told in the Dynegy and Snohomish case that they would have to go to FERC. The disgorgement remedies and electricity – Well, I know about electricity. Yes, I know you do. And you don't have the limitation on FERC authority that you have in natural gas. I don't believe this. No, in fact, I would say, Your Honor, that there are no limitations on gas. The only limitation I'm aware of that the courts have addressed was in the Bonneville Power case that you're familiar with. Oh, Mr. Well. Yes, I know you know it well. There was a specific statute that applied in electricity preventing FERC from ordering disgorgement from governmental entities or non-public utilities. That same statute doesn't exist in gas. In fact, in the POC versus FERC case before the D.C. Circuit in 1998, they did have a state utility, California State Utility, to someone who was complaining about the jurisdictional components of a rate collected unfairly. And the electricity and gas cases have the – the electricity and gas statutes are substantially similar. And they were two years ago, three years ago, in the electricity cases that the 9th Circuit decided. In Dinergy, they talk about the – they rely on ARCLA and Stanislaw, and they have in footnote 8 a reference to the Federal Power Act and the Natural Gas Act being substantially the same. And Stanislaw County, of course, relied on the Supreme Court's electricity decisions in Nantahala, Mississippi Light and Power in Montana, Dakota, as well as the gas cases – I'm sorry, the other cases, Keogh and Square D. And in Grays Harbor, only in 2004, this Court talked about, in footnote 8, the fact that the Federal Power Act and Natural Gas Act were substantially similar. And in Snohomish in 2004, this Court relied on the D.C. Circuit gas decision of Elizabethtown, affirming market-based rate authority. In each of those cases, only a few years ago, the courts found that the Natural Gas Act was substantially identical to the Federal Power Act and on that basis allowed the filed rate doctrine to apply and barred claims just like these in the electricity context. And I would submit to this Court that nothing has changed since 2004. If the statutes were substantially the same to justify relying on gas cases and gas statutes then to file – to provide filed rate doctrines application and have claims heard at FERC, they certainly apply now. And in 7170, there's a broad relief, the same relief that this Court talked about in Section 309 of the Power Act in the trio of cases in which Judge Clifton was involved. And that broad relief allows disgorgement and retroactive refunds, which can go to anyone. And in fact, they will. Just as in the electricity refund proceedings, which are referenced throughout the decision by the Ninth Circuit in Pusey v. FERC, those are going to go ultimately pass through to refunds to retail customers, the same can be true for gas customers. And that is you have FERC decide the issue, was the transportation of natural gas done appropriately? That's what FERC decides. Was the transactions among people in the wholesale markets done appropriately? Another issue FERC decides. Were the reports to the publishing indices done appropriately? Again, something that is empowered exclusively by FERC to look at. And then once they decide whether the conduct was correct, they will decide whether the rates in the wholesale markets were right. But in each case here, in Gallo and all the cases you're hearing, what they're asking for is a jury to first decide what the conduct was in the natural gas interstate and sale markets and whether it was appropriate, and then to come up with a hypothetical rate for natural gas that would have existed in these California border markets. And no court has allowed that to happen before now. Yes, Your Honor. What's the authority of FERC over the indices? You were indicating that FERC had some authority to control the indices. Yes. It isn't that the FERC has control over the indices directly, but as FERC has said in its 2003 and 2006 orders that we cite in the papers, it has authority over most of the transactions that are reflected in the indices because they're wholesale transactions at the border markets. And it also has inherent authority to require the people who are reporting to the indices to follow codes of conduct, which it announced with some explicit rules in 2003 and more recently in 2006. But it said that inherent in the blanket marketing certificates that each of the gas companies have was always a rule that required them to report fairly and also to trade and transport gas fairly. I understood that the indices were comprised of not only information from FERC jurisdictional sales, but also from non-jurisdictional sales. Does FERC have any authority over the reports relating to sales not within their jurisdiction? FERC has exclusive authority over all the people who are reporting, whether it's a retail transaction, as the Court has referred to it, or it's a wholesale. If it's done, if it's reflecting a sale by a jurisdictional entity, an entity with a blanket mark certificate, FERC has authority. And FERC's authority was you keep working in the word exclusive. And indeed, I'll go back to the same question I'm posing, because I think that the hidden premise in what you're arguing, or let me put it a different way. Don't you have in some fashion to deal with Section 1B of the Act, which makes clear that what FERC's jurisdiction is, and it doesn't get to resale to that ultimate consumer? Your Honor, we are dealing with it in a multitude of ways, and I'll tell you why. Well, I hear that, but none of them seem to be very straightforward, to be honest. I understand the whole idea that you've got a commingled market, and in some fashion FERC's authority spreads. But I think at some point you've got to deal with the fact that FERC's jurisdiction is curtailed. Why is it that the ultimate consumer can get relief via FERC if FERC doesn't have jurisdiction over the purchase made by that ultimate consumer? Your Honor, the reason is as follows. FERC is not without jurisdiction over what the court has referred as retail sales. It is solely without exclusive jurisdiction to set rates. But it has jurisdiction over the interstate transportation system and the wholesale markets at issue, even if under 636A, and in the Missouri River case cited in 636A, the ultimate purchaser is a retail purchaser. And secondly, and this is a separate entirely important issue, whether or not they have transactional authority, that is, whether they govern a retail transaction. In each case, in this case and all the cases you hear, people are not asking the courts or a jury to determine what was appropriate for a price in a retail transaction. In the Gallo case in particular, the undisputed facts are that they're asking for a jury to look at the market price at the PGC city gate, which is under FERC's jurisdiction. In 3, 4, 5, and 6 in the record, it is at pages 2, 13, 14, 15, and 18, you can see that they're talking about their experts coming up with hypotheses under which to estimate what the PG&E city gate gas prices would have been. Not an index price, but the wholesale border market. In number 5, they're estimating that their PG&E gate prices would be not prices that were actually paid, but are estimates of what that market price should have been under the factors they allege. And in response to number 6, they say that all of their damages are based, at least in part, on these hypothetical prices. And the Supreme Court in ARCLA said that no jury can decide what the just and reasonable rate for gas should be in the wholesale markets. That decision is followed randomly. And I'm not sure the Court says that it's hands-off in those other sections. Actually, Your Honor, I think the footnotes are, if you read them together, 4, 5, and 14, and you read them with the recitation to the FERC orders, don't say that at all. It's not talking about a lack of first jurisdiction. In those circumstances, the file rate doctrine wouldn't apply, not because there's no jurisdiction,  has already in it a right to charge a certain price up to the seller all the way up to a particular limit. So because it's already on file with FERC, the file rate doctrine doesn't bar a claim by the seller in that case from going forward. DICTA, it was, but it would be positive DICTA, not the opposite way around. But in the status law case, we had exactly this case. You had a claim that there was a constraint on pipelines, not the reporting aspects, as I know you gas coming down from Canada into the same PG&E city gate market. And there wasn't a question, as Judge Ishii found in this case, that the plaintiffs were all retail customers there. The question was, would you have to assume a hypothetical rate upstream in the border markets to establish any damages? And the answer was clearly yes, and relying in part on both the Nantahala decision by the Supreme Court and also on the Arklow decision, the Court said you can't do that. And that's been followed by this circuit in the Ninth Circuit decisions in 2004, Dynergy, the Grays Harbor, and Snohomish. Excuse me. In the status law case, the focus of the Court was solely on the wholesale prices that were under FERC jurisdiction. And I didn't see any discussion of the retail prices or any analysis of that. Is it your understanding that the Court did rule or there was some ruling on the retail price issue? Well, since all the plaintiffs, including Mary Grogan, who was the lead class plaintiff, were people in the retail level, they were talking about retail prices that had a wholesale component. And as the Ninth Circuit found in the Snohomish II case last year, all retail prices have a wholesale component. Now, in the going back to the indices for the moment with an eye to Stanislaus County, which focused solely on the Is it feasible, I guess I would say, that a court could disentangle the indices to look at the FERC jurisdictional transactions separately from the non-jurisdictional transactions? No, because the gas comes to the same interstate transportation system, to the same border market, and it gets sold in the same border market. But they're separate transactions, correct? Oftentimes they are. Sometimes, like we've talked about here, there are combination deals where it's a transaction and you resell part of the gas back. So in that case, it's partly a direct sale for end use and partly a sale for resale. But it's not possible to figure out, at least from this end, where each particular molecule came from that was reported to the indices. But in the end, regardless of what led to the indices, what they're talking about in this case, and in all the cases, is first assuming a different rate in the border market under FERC's jurisdiction, the PG&E city gate market or, in other cases, the TOPOC market. And then assuming that whatever that price would be is the price they should have paid through an indices or otherwise. So the first step is finding that the conduct was wrong. Then the second step is assuming a different wholesale market rate. The third is to assume that's what they would have paid in their contract through the indices. So you can't skip over in any way the fact that you're reaching up into FERC's jurisdiction over both the conduct and these rates. And you can't skip over the fact that in this particular case and in all the cases, they are truly coming up for the first time with a hypothetical rate for natural gas that they claim would have existed in these border markets. And no court, from the Supreme Court back in 1924 all the way to the present or the Ninth Circuit cases, has ever found that a private plaintiff can ask a jury to decide what the price of gas should have been in these border markets. And that's what can't be done except at FERC. I see I've run out of time, Your Honor. I suspect we haven't heard the last of some of these subjects. May it please the Court. My name is Steve Williams. I'm here today with Barbara Lyons. The privilege today of addressing this Court on behalf of the E&J Gallo Winery, as you had requested at the outset to put this in context. The E&J Gallo Winery operates a bottling plant in Modesto, which it manufactures all the bottles that it uses in its operations. The plant operates 24 hours a day, seven days a week, powered by natural gas that Gallo purchases at PG&E CityGate for end use in order to make bottles. As Congress has said, as the Supreme Court has said, and as Judge Ishii recognized below, the line of the Natural Gas Act is clear and complete. It cuts sharply and cleanly between sales for resale and direct sales for consumptive uses. No exceptions were made in either category for particular uses, quantities, or otherwise. And the focus of a lot of the questions have been, can Gallo go to FERC for relief? And the answer to this bright line is clearly no, because FERC does not have any jurisdiction over retail prices charged in natural gas transactions. And, in fact, we can go to the words of the appellant when FERC tried to act in 2002 to impose some further regulations in the field of natural gas. And you see in the record at pages 519 and 520 that the response of the appellant then was FERC fails to, quote, address the ramifications of implementing a two-tier gas market where a limited number of gas sellers are regulated while the vast remainder are not. In a footnote in that same pleading filed on behalf of the appellant, they recognize that, quote, first sales of gas were deregulated by statute long ago, and the commission's residual regulatory power over gas sales prices is now limited to the commission's sales for resale authority. Similarly, FERC had, quote, failed to acknowledge that the commission has no statutory power to set retroactive rates under Section 4 of the Natural Gas Act, nor can it order retroactive refunds under Section 5 of the Natural Gas Act. FERC itself acknowledges the limits of its jurisdiction, as it must. And this Court is just going to break those apart. I mean, the lack of authority to order retroactive refunds is sort of pervasive, and yet that doesn't cause us to say that the courts can get involved where FERC clearly has jurisdiction, but doesn't exercise it, perhaps because it doesn't have authority for retroactive refunds. I'm kind of working my way backwards through the arguments to try to sort out why it is and in what areas FERC has some authority and where it doesn't. And I guess what I'm getting back to, it seems to me that the two arguments I hear from just Mr. Fogleman, from the gas companies generally, are either what I'll call the upstream authority, which Stanislaus may speak to as much as anything, that is, because the transaction has gone through or resembles a wholesale transaction, there is limitation of what courts can do with regard to the ultimate purchaser transaction, even though FERC itself might not speak directly to it, or the alternative argument that says FERC does have authority in this neighborhood because it's got generalized authority. I'll reference the electricity cases there. That argument, FERC tried that argument in Bonneville Power, and our court said, nope, can't do that because you run into the wall of the specific provisions within the Power Act that says you can't reach the governmental utilities. There's not really an equivalent of that here. FERC hasn't tried to assert in the natural gas context that I'm aware of that it has authority to get to transactions that don't appear to be within its jurisdiction, but possibly it could. If it elected to do that in electricity, it probably could try to do that in natural gas and see what kind of walls it runs into there. So those are the things I hear from the gas companies that say that even if FERC doesn't get to this particular transaction on the face of the Natural Gas Act, this is within the realm of FERC territory that's exclusive to the regulatory body, and courts, you can't So that's the problem as I understand it. What's your perspective on that? I think you've stated quite clearly what the arguments are, and in a way, Your Honor, I think the two blend somewhat. To discuss the upstream authority in the Stanislaus case, and if I can put in perspective the Stanislaus Foods case, the issue in the Stanislaus Food case was really not are these retail purchases or not. The issue in the Stanislaus Food case was the fact that you had actual rates and tariffs filed subject to specific regulatory review by the agencies. It is a direct filed rate case. We don't have any filed rates here. There's no doubt about that. But second, I think the Bonneville Power case, and FERC has not made the argument, Your Honor, suggested that, well, gee, we can somehow exercise other powers to broaden the scope of jurisdiction Congress gave us, but that's certainly exactly what the problem here, that somewhere out there is something FERC has jurisdiction over. And even if on the record we have, after years of discovery, we weren't able to find anything to show the Court below or this Court that, in fact, anything about Gallo's damage claims implicates any rate or tariff of FERC or any transaction subject to FERC jurisdiction, somewhere out there it exists. But the same problem would confront that argument as the Court ruled in the Bonneville case, which is the role of this Court is to read the statute as Congress wrote it. And Congress wrote the statute to explicitly take — I'm sorry, let me rephrase that. Congress wrote the statute to not give FERC any jurisdiction over retail transactions. There is a difference between the two. In Bonneville Power we were dealing with something that included express provisions in terms of who's reached and who's not, in terms of where the — whose pocket you can reach into for refunds, put it that way. Here you're talking about a jurisdictional provision that speaks to the transaction. Now, FERC's not in the room here because this isn't a petition for review from a FERC decision. So we're looking at it from the other side of the mirror. But if FERC were asked to and did assert authority of the kind that it asserted in the decision that was overturned in Bonneville Power, then at least I can understand the thread that says its authority over natural gas transactions generally gives it authority to speak to transactions which otherwise might not be within its jurisdiction. I mean, if FERC would come out with something that spoke to the consumer transaction, Bonneville Power may weigh against it, but doesn't really bar that possibility. And it's hard for us because the instructions we get from the Supreme Court is if it's their territory, we stay out of it. So we've got to figure out not only what territory FERC has staked out, but what territory it could legitimately stake out and stay behind that wall. Certainly. And I think as with Bonneville, you have to start with the clear language of the statute and the bright line, and you have to also evaluate where FERC's jurisdiction ends against the backdrop of not finding implied repeals of the antitrust laws and not finding implied preemption where Congress's intent to do so is not clear and explicit. This is not even an instance where it's a lack of an indicia. This is an instance where there's clearly stated restrictions on FERC authority and jurisdiction that govern the very transactions at issue here. And I think — What are you referring to there when you say clearly stated restrictions? Is that 1B or something else? It's 1B. Okay. Retail sales are outside FERC jurisdiction. First sales are outside FERC jurisdiction. Sales of Canadian gas, which are clearly what we're talking about here, are outside of FERC jurisdiction. Just a second to make sure I have a handle on your facts. What are the facts with regard to Gallo or the state of the case for Gallo in terms of first sales or Canadian gas? I mean, is there an allegation or is it the State assumed in that case that, in fact, you've got transactions that never come within FERC authority because they were first sales? I think on the record we do in that what we have is a Canadian producer of natural gas. We have a system through which Canadian natural gas enters the California market. And we have in the record, and I apologize because I can't put my finger on that site, our argument below to the appellant, you need to show that these are not first sales and not sales of Canadian gas. We believe that was their affirmative requirement on a motion for summary judgment. Summary judgment, I think you're right. But if the issue is live as far as you're concerned that at least that all or some of the gas acquired by Gallo did not come through what I'll call FERC jurisdiction transactions, well, then at least some of your case might still be alive if that's where the line gets drawn. But then the question is that with this market indices and whether even assuming that your transactions were not within FERC's jurisdiction, how can you make a damage case without raising question about the wholesale market rate which FERC had approved at least for jurisdictional transactions? Because, well, there's, Your Honor, respectfully, several problems with that argument. And I heard the assertions by counsel which suggested that everything in the indexes is a regulated wholesale rate. That argument's in the briefs. But curiously, if you look in the briefs, you don't ever see any evidence cited for that. In the record before the Court below, in the record before this Court, and I apologize not in the excerpts, is the actual gas daily, the document that we're all talking about here today, the document that the evidence we developed shows this appellant falsified information and lied to that index and reported that information as true, and that caused the prices that Gallo paid to be increased. And if you look at that document, and I can tell the Court where in the record below to find that document, you see, as I think the Court may have mentioned, they collect information from end users and publish it. That's not a FERC-regulated or approved rate. That's simply a price that an end user paid in a retail natural gas transaction. That's not within FERC's jurisdiction. Moreover, the remaining transactions listed in there are listed as prices. FERC has never reviewed or approved any rate published in any of these indexes, and there's no evidence in this record to suggest that that, in fact, is the case. And you stand back a moment and you look at them and you say, and how in the world could FERC regulate something that never happened? If someone simply lies to the index and calls them up and tells them something that didn't take place, I sold this volume of gas at this price, but it never happened, that certainly is not within the jurisdiction that Congress gave to FERC. Just to clarify one other point that I wasn't clear from the documents, was Gallo's price, the price Gallo paid, was it pegged to, I guess is the word, the indices? Was that explicit, if not in your contract, in some other documentation? Yes, it was explicit in the contract that the price Gallo would pay was, I think, the terminology is pegged to the NGI, Natural Gas Intelligence, or the Gas Daily published price for natural gas at PG&E CityGate. That was the retail price Gallo paid for its purchases of natural gas for its own use. And there was a suggestion in the course of argument that maybe Gallo was using this for resale, but I don't think that is really sincerely felt. Overwhelmingly, the record is that all the gas Gallo purchased, with maybe tiny exceptions, was used to fire those plants in Modesta where the bottles were made. I want to step back and also put in perspective the bright line between retail and wholesale. There's no doubt FERC has no jurisdiction there. There's no question here that there's no rate or tariff that was ever filed with FERC or approved by FERC. We're not resetting anything FERC ever gave its approval of. And to go beyond there, there's the suggestion that this Court can simply look at what it did in the electricity cases because the statutes are deemed to be the same. And I think that's clearly not so. Some of the differences have been addressed previously in the course of argument, but as the Court stated in Bonneville, it was of no small significance there that different statutes are at issue. The same thing applies here. And if you go to the electricity cases, in those instances where the filed rate doctrine has been applied, in each of those instances there was a pre-transaction requirement that FERC make a specific determination of a lack of market power, a post-transaction requirement that the rates, the tariffs, be actually filed with FERC. There was a filing requirement for those rates. You don't have that here. Why is it different that FERC made a general determination in the natural gas market that no entity had market power? Why did it need to make a specific transaction-by-transaction or player-by-player finding? I don't think it's a specific transaction. It's a specific finding before the transaction that that company lacks market power. But more importantly, it's the post-transaction finding that the documents relating to those transactions have been filed with FERC and FERC is reviewing and evaluating those transactions. In the California v. FERC decision, that was critical to this Court's determination that FERC was, in fact, exercising power in a manner that was permissible, in a manner that actually was regulation, a manner that would actually provide basis to take it outside of this Court's power. But is there authority to support the proposition that the filed rate doctrine stops? I mean, part of the problem with all of the cases in the current day is that utility pricing simply changed, that we're in a market rate environment, and the fiction of the FERC system still stays in place. We've accepted the filed rate doctrine even in instances where nothing is filed, and certainly there's not review and a calculation by FERC that this is the just and reasonable rate. And yet there's also not much doubt that the doctrine lives on. Is there any authority to suggest that it stops because we don't really have FERC review and approval of filed rates? Well, I think this Court's analysis in California v. FERC speaks to that. What the Court had said was it was critical in this Court's analysis there, as I read the decision, that FERC represented to this Court that it was not relying solely on approval of market forces alone, but rather, quote, the crucial difference in the present circumstances was the dual requirement of an ex-ante finding of the absence of market power and sufficient post-approval reporting requirements. That doesn't exist in this. Well, I understand that. I guess what I'm trying to ask is, is there a case yet where somebody's walked around to the other side and said, you know, we don't have that here, and so as a result, the doctrine doesn't apply any longer? Or is that what you've got in front of us here? I think that's what's in front of us here. Certainly in telecommunications, I think the Court's gotten there and dabbled. Judge Berzon has said if there's no rate filing, then there's no filed rate. And there can be no question that that logically makes sense. The whole purpose of the filed rate doctrine as it developed was to protect consumers from being taken advantage of by parties who could exercise their market power in a way that would cause those rates to be increased. Wasn't dabbling based on indication of congressional intent because of statutes passed specifically to de-tariff in that context? Certainly in that context, that was very important. But again, in this context that we have, I think that the equivalent that we find in the electricity cases that have held the filed rate doctrine to bar claims is the ex-ante and post-transaction filings. Without those and without any rate or tariff actually filed and approved by FERC, it would be, I would submit, against all the principles by which preemption is measured, all the principles by which the filed rate doctrine is measured, and the principles that Judge Ishii quoted below concerning whether or not we can slightly find repeal of antitrust laws by implication from regulatory statutes. Those things, it would do violence to those things. It would do violence to the differentiation between the balance of power between the Federal Government and the State sovereigns and the balance of power between the executive and the judiciary to say where there's no rate or tariff approved by FERC, where there's no pre- and post-review by FERC, as this Court said in California v. FERC, there's really no regulation at all in that circumstance. And my time is coming to a close, but what I'd like to do briefly to summarize this is put in context. This is an instance in which, upon the filing of the complaint, a motion to dismiss was filed. And at that time, when the motion to dismiss was denied, the Court made very clear what it would be looking for from the parties in order to determine whether, as Judge Ishii stated, does Gallo's claim for damages implicate any rate or tariff approved by FERC, or does it implicate anything within FERC's exclusive jurisdiction? Years of discovery ensued. Certainly, the appellant has all of its documents and everything available to it to make that showing. And on the record, after all that, it submitted nothing to show any jurisdiction by FERC over any of the conduct which Gallo claims gives rise to its price inflation damages. There was no showing ever made that anything about Gallo's damage claim implicates the jurisdiction of FERC in any way whatsoever. So my time is coming to a close. I thank the Court very much. We thank you. We thank both counsel in this case for the arguments. And we'll move to the next case. And just to give everyone a chance to stretch and take a deep breath, we will take about a five-minute recess as you reassemble and reconfigure yourselves. We'll see you in five minutes.
judges: B. Fletcher, Clifton, Ikuta